**UNITED STATES of America, Plaintiff,**

v.

**Javier A. CORRAL, Defendant.**

**Javier A. Corral, Petitioner,**

v.

**United States of America, Respondent.**

Nos. C1–02–051, A1–04–144.

United States District Court, D. North Dakota, Southwestern Division.

March 30, 2005.

Javier A. Corral, Sheridan, OR, pro se.

## ORDER DENYING DEFENDANT'S PETITION FOR HABEAS CORPUS RELIEF UNDER 28 U.S.C. § 2255

HOVLAND, Chief Judge.

Before the Court is the Defendant's pro se Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, filed on December 27, 2004. On January 10, 2005, the Court reviewed the motion and ordered the Government to file a response. On February 10, 2005, the Government filed a response requesting that the Court deny Corral's motion for post-conviction relief. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

On July 19, 2002, the defendant, Javier Corral, was indicted on four drug-related charges. Count One charged Corral and four other individuals with conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance contain-

ing methamphetamine, cocaine and marijuana. Count Two charged Corral with possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. Count Three charged Corral with possession with intent to distribute cocaine. Count Four charged Corral with possession with intent to distribute marijuana. *See* Docket No. 1.

On January 8, 2003, Corral pled guilty to Count One of the Indictment. *See* Docket No. 93. In Paragraph Six of the signed Plea Agreement, Corral acknowledged the following:

(a) From approximately mid 1999 through February 2001, Javier Astorga Corral, a/k/a Javier Corrales was in North Dakota for the purpose of bringing in and selling illegal controlled substances. During the conspiracy, Corral would direct and facilitate methamphetamine, cocaine and marijuana being brought into North Dakota from the State of Washington.

(b) When the illegal controlled substances were brought into North Dakota, Javier Astorga Corral, a/k/a Javier Corrales would facilitate the drugs being distributed to various individuals around the State of North Dakota for further distribution. Javier Astorga Corral, a/k/a Javier Corrales was also involved in collecting money for the sale of the illegal controlled substances.

(c) In February, 2001, Javier Astorga Corral, a/k/a Javier Corrales facilitated the importation of approximately 1.7 pounds of methamphetamine, approximately 8 pounds of marijuana, and approximately 1 pound of cocaine brought into North Dakota from the State of Washington by [two co-defendants].

(d) Upon arrival in North Dakota, the controlled substances were taken by Javier Astorga Corral, a/k/a Javier Corrales. These are the controlled substances that were confiscated by law enforcement in early February 2001.

(e) The defendant acknowledges that his conduct satisfies all the elements of Title 21, United States Code, Section 846 and that this Court has jurisdiction over this matter.

(f) The defendant acknowledges that his involvement in the conspiracy to distribute controlled substances as alleged in Count One of the Indictment, involved 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, and involved cocaine and marijuana.

(g) The parties stipulate that the quantities of the controlled substances for the court to consider in the sentencing phase is as follows:

(i) 4,000 grams (4KG) of a mixture and substance containing a detectable amount of methamphetamine;

(ii) 476 grams of cocaine; and

(iii) 3.5 kilograms of marijuana.

*See* Plea Agreement, ¶ 6. The parties stipulated that Corral's base offense level would be 34 based on the quantity of methamphetamine. *See* Plea Agreement, ¶ 14.

The Presentence Investigation Report (PSR) calculated a total offense level of 34 and criminal history category IV, yielding a Sentencing Guideline range of 210–262 months. *See* PSR, p. 22. The base offense level of 34 was arrived at by calculating the total amount of drugs; in this case the equivalent of 8,098.7 kg of marijuana. *See* PSR, p. 13. A three-level sentencing enhancement was contemplated under U.S.S.G. § 3B.1.1(b) for Corral's leadership role and a three-level downward departure was contemplated under U.S.S.G. § 3E1.1(a) for "acceptance of responsibility." *Id.* Corral's prior convictions, along with each conviction's assigned guideline score, were included in the PSR. The scores were calculated as follows: Assault,

Domestic Violence1 point; Contempt of Court1 point; Possession of Marijuana/Drug Paraphernalia and Driving Inattentive/Reckless1 point; Possession of Paraphernalia With Intent to Use2 points; and Leaving the Scene of a Property Accident2 points. In addition, two points were added under U.S.S.G. § 4A1.1(d) for committing the present offense while on probation and two points were added under U.S.S.G. § 4A1.1(e) for committing the present offense less than two years after release from imprisonment. This resulted in a total of 9 criminal history points, which placed Corral at a criminal history category IV. *See* PSR, pp. 14–16.

On April 11, 2003, Corral was sentenced to a term of 210 months which was at the low end of the Sentencing Guideline range. *See* Docket No. 139. Counts Two, Three and Four of the Indictment were dismissed at the Government's request. *See* Docket No. 146. Corral did not appeal his sentence.

On December 27, 2004, Corral filed the present motion under 28 U.S.C. § 2255. Corral offers three avenues for relief in his petition: (1) his sentence violates the Sixth Amendment because it was based on sentencing enhancements not supported by facts found by a jury beyond a reasonable doubt; (2) the sentencing provisions of 21 U.S.C. § 841(b) under which he was sentenced are facially unconstitutional, and (3) he received ineffective assistance of counsel for failure to raise these issues at sentencing.

## II. LEGAL DISCUSSION

### A. SIXTH AMENDMENT

■ In *United States v. Booker,* 543 — U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),[1] the Supreme Court found that its

holdings in *Blakely v. Washington,* 542 U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), apply to the federal Sentencing Guidelines. Therefore, the Sixth Amendment is violated by the imposition of an enhanced sentence under the Sentencing Guidelines based on a judge's determination of fact, other than a prior conviction, that was not found by a jury or admitted by the defendant. *Id.* The Supreme Court reaffirmed its holding in *Apprendi,* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. Corral contends that *Apprendi* and its progeny render his sentence improper under the Sixth Amendment. Specifically, Corral disputes the application of a three-level sentencing enhancement for an aggravating role under U.S.S.G. § 3B1.1, the calculation of the offense level under U.S.S.G. § 2D1.1(c)(3), and his criminal history category. The Court will address each of Corral's contentions.

### 1) U.S.S.G. § 3B1.1(b)—Aggravating Role

■ Under U.S.S.G. § 3B1.1(b), a three-level sentencing enhancement is warranted "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive...." The Sentencing Guidelines explain that

To qualify for an adjustment under this section, the defendant must have been

---

**1.** Corral did not cite to *Booker* in his petition because the decision had yet to be handed down.

the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but *who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.*

U.S.S.G. § 3B1.1, comment n. 2 (emphasis added). A plain reading of paragraph six of the Plea Agreement, recited above, reveals that Corral admitted to conduct that clearly satisfies U.S.S.G. § 3B1.1(b). Corral admitted to directing and facilitating the distribution of the drugs, as well as collecting money for the sale of those drugs. *See* Plea Agreement, ¶ 6. The Supreme Court has made it clear that the "statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington,* 542 U.S. ——, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) (emphasis added). It is apparent from the admissions contained in the signed Plea Agreement that Corral was a manager or supervisor of criminal activity that involved five or more individuals or was otherwise extensive. *See* Plea Agreement, ¶ 6. Based on the admitted conduct, the three-level enhancement triggered under U.S.S.G. § 3B1.1(b) does not run afoul of the Sixth Amendment or the pronouncement of the Supreme Court in *Booker.*

2) *2D1.1(c)(3)—Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy*

■ Under U.S.S.G. § 2D1.1(c)(3), the base offense level of 34 is applicable when the drug quantity in question is "[a]t least 3,000 KG but less than 10,000 KG of Mari-

huana." In the present case, the parties stipulated to the exact quantities of drugs; that being 4,000 grams (4 KG) of a mixture and substance containing a detectable amount of methamphetamine; 476 grams of cocaine; and 3.5 kilograms of marijuana. *See* Plea Agreement, ¶ 6. The total quantity was the equivalent of 8,098.7 kg of marijuana, thereby falling squarely under U.S.S.G. § 2D1.1(c)(3) at a base offense level of 34. *See* PSR, p. 13. Additionally, the parties stipulated that the offense level of 34 was appropriate based on the quantity of methamphetamine. *See* Plea Agreement, ¶ 14. Based on the Defendant's admissions and stipulations, a base offense level of 34 was appropriate under U.S.S.G. § 2D1.1(c)(3) and does not run afoul of the Sixth Amendment or *Booker.*

3) *Criminal History Category—Prior Convictions*

■ It is well-established that courts may take into account the fact of a prior conviction without the use of a jury. *See Almendarez–Torres v. United States,* 523 U.S. 224, 228, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). In other words, the fact of a defendant's prior convictions does not require a jury determination in order to support a sentencing enhancement or increase in a defendant's sentence. Corral was calculated with a criminal history category IV, to which no objection was raised. It is clear that such a calculation does not run afoul of the Sixth Amendment or *Booker.*

In summary, Corral's case is unaffected by the Supreme Court's pronouncements in *Apprendi, Blakely,* and *Booker,* because a judge may increase a sentence based on facts admitted to by the defendant or based on a defendant's prior convictions. In this case, the upward adjustments or enhancements, as well as the base offense level, were based on facts to which Corral

specifically admitted to in the Plea Agreement or which were based on his prior convictions.[2]

### B. *CONSTITUTIONALITY OF 21 U.S.C. § 841*

Corral contends that 21 U.S.C. §§ 841(b)(1)(A) and (B), which set forth the penalties for violating Section 841(a), are "facially unconstitutional" because the statute relies upon the type and quantity of drugs to determine an appropriate punishment, which are sentencing factors that must be determined by a jury beyond a reasonable doubt pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). As such, Corral maintains that the Supreme Court's holding in *Apprendi* rendered both statutory provisions unconstitutional.

Corral cites to the Ninth Circuit cases of *United States v. Nordby*, 225 F.3d 1053 (9th Cir.2000) and *United States v. Buckland*, 259 F.3d 1157 (9th Cir.2001), in support of his argument. However, the most recent case of *United States v. Buckland*, 289 F.3d 558 (9th Cir.2002), overruled *Nordby*[3] and expressly rejected any facial challenge to 21 U.S.C. §§ 841(b)(1)(A) and (B). The defendant in *Buckland* advanced the same argument as Corral. The Ninth Circuit, in an en banc decision in *Buckland*, rejected the argument finding that a defendant can be prosecuted under 21 U.S.C. § 841 and sentenced under the higher sentencing provisions of 21 U.S.C. § 841(b) if the type and quantity of drug was charged in the Indictment and proved beyond a reasonable doubt. 289 F.3d 558, 564–568.

More important, the Eighth Circuit has joined the list of courts to have rejected this type of facial challenge to 21 U.S.C. § 841. *See United States v. Sprofera*, 299 F.3d 725, 728 (8th Cir.2002); *United States v. Outen*, 286 F.3d 622, 636 (2nd Cir.2002); *United States v. Lopez–Lopez*, 282 F.3d 1, 22–23 (1st Cir.2002); *United States v. Kelly*, 272 F.3d 622, 624 (3rd Cir.2001); *United States v. Martinez*, 253 F.3d 251, 256 n. 6 (6th Cir.2001); *United States v. Brough*, 243 F.3d 1078 (7th Cir.2001); *United States v. Cernobyl*, 255 F.3d 1215, 1219 (10th Cir.2001); *United States v. Candelario*, 240 F.3d 1300, 1311 n. 16 (11th Cir. 2001); *United States v. McAllister*, 272 F.3d 228, 232 (4th Cir.2001); *United States v. Slaughter*, 238 F.3d 580, 582 (5th Cir. 2000). The Court finds that Corral's facial challenge to 21 U.S.C. § 841 is without merit.

### C. *INEFFECTIVE ASSISTANCE OF COUNSEL*

Finally, Corral contends that his right to effective assistance of counsel has been violated because his attorney failed to raise the issues discussed above at the time of sentencing. The Eighth Circuit outlined the claim as follows:

> To obtain relief based on a deprivation of the right to effective assistance of counsel, [the defendant] must prove two elements of the claim. First, [the defendant] "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Strick-*

---

**2.** The Government's brief contains extensive argument as to why the Court should not find *Blakely* or *Booker* to be retroactive so as to benefit Corral. The Government also argues that Corral's claim under *Apprendi* should be deemed untimely. However, in light of the Court's findings those issues need not be addressed.

**3.** *Nordby* was overruled to the extent that it was inconsistent with the Ninth Circuits holding in *Buckland*. 289 F.3d 558, 567–68 (9th Cir.2002).

*land v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. We seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* Second, [the defendant] "must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. This requires [the defendant] to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

*United States v. Thammavong*, 378 F.3d 770, 772 (8th Cir.2004).

The Court finds that Corral has failed to prove ineffective assistance of counsel. As the Court has outlined, Corral's sentence was, and still is, entirely proper under the current state of the law. Corral is unable to prove either element required to prevail on an ineffective assistance of counsel claim.

## III. *CONCLUSION*

For the reasons set forth above, the Court **DENIES** the Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Docket No. 168).

**IT IS SO ORDERED.**